UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>        Plaintiff,<br><br>    v.<br><br>LAMAR NOLAN RYAN,<br><br>        Defendant. | Case No. 3:23-cr-00291-WHO-1<br><br>**ORDER ON REMAINING MOTIONS IN LIMINE**<br><br>Re: Dkt. Nos. 23, 24 |

I addressed most of the motions in limine filed by the parties on the record at the hearing and in the minute order. [Dkt. No. 40]. There are two remaining, one from each side, which seek resolution of the same issues. This Order addresses those motions and assumes familiarity with the general background facts of this case laid out in the prior order. [Dkt. No. 37].

Defendant Lamar Ryan moves to exclude the text messages that the victim, Alita Tahuahua, sent to the caller, Alexus Gamez, before the police arrived at the scene; the statements made by Gamez to the police before the police arrived at the scene of the incident; and the statements that Tahuahua made to police. ("Def. Mot.") [Dkt. No. 23] 16:1-18:23. The government moves to admit the same statements. ("Gov. Mot.") [Dkt. No. 24] 1:4-5:11. At the pretrial conference, the government shared for the first time that it is still working to locate Tahuahua and so it is unclear whether she will provide live testimony, and I take that into consideration in this Order.

I.  **TEXT MESSAGES FROM TAHUAHUA TO GAMEZ**

The text messages at issue show a group chat with multiple individuals, including Gamez and Tahuahua, where Tahuahua says she is "fucked," that a "pimp" is trying to "convince" her, that she "feel[s] so stupid" and that the man has a gun, that he was "taking [her] to another hotel,"

and that she is "sad as[ fuck]" and "feel[s] lost inside r[ight ]n[ow]."  [Dkt. No. 23-8].  Though the time stamp shows only that the first message was sent at 10:03 a.m., I am unpersuaded by Ryan's arguments about timing and reliability concerns because the order of messages is clear from the exhibit.  It is undisputed that the messages came from Tahuahua and went to Gamez and that Gamez called the police about these messages within the next two hours.

The messages are admissible as non-hearsay for their effect on the listener—Gamez—because they show why she called the police.  *See United States v. Brody*, No. 3:22-CR-00168-WHO-1, 2023 WL 2541118, at *10 (N.D. Cal. Mar. 16, 2023) (collecting cases and finding the text messages at issue were "admissible as non-hearsay statements admitted for the effect on the listener, not for the truth"); *see also United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) (finding statement was non-hearsay to show effect on the listener and explain the circumstances under which other actions were taken).  Ryan argues that the messages cannot be admitted for their effect on the listener because Tahuahua specifically asked the recipients to not call the police while Gamez ignored that request.  But that argument misses the forest for the trees—the effect of those messages on *Gamez* was to provoke her to call the police, which is understandable given the messages said that Tahuahua was "sad" and "lost" in a car with a man with a gun.  That is not hearsay.  *Cf. Williams v. Illinois*, 567 U.S. 50, 108 n.3 (2012) (Thomas, J., concurring) (noting that the statements were introduced for their truth, rather than for "the nonhearsay purpose of showing their effect on [the listener]" because they "went well beyond what was necessary to explain why [the listener] performed" the subsequent actions).  And importantly, there is other evidence that will be presented to the jury that it could use to find that Ryan knowingly possessed a firearm.  *Cf. id.* at 109 n.4 (explaining that a "complete lack of other evidence tending to prove the facts conveyed by" the contested statement "would completely refute the not-for-its-truth rationale").

Their admission is also not more prejudicial than probative because they are admitted not for their truth but rather to explain why Gamez called the police and to contextualize the government's theory of the case.  *Cf. United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995) (explaining that the government may sometimes use evidence that would otherwise be excluded where it is "necessary to put [the defendant's] illegal conduct into context" because "the

2

prosecution is not restricted to proving in a vacuum the offense and . . . [the jury] cannot be expected to make its decision in a void" quoting *United States v. Daly,* 974 F.2d 1215, 1216 (9th Cir. 1992)).  The texts also bolster Gamez's testimony about what Tahuahua said and why Gamez called the police.

However, if Gamez does not testify, it is not clear how these messages could be admitted or whether a hearsay exception would apply.  Unlike for the statements that Gamez made to the police about Tahuahua, *infra* Part II, it is not apparent that the police saw these messages at the time of the incident so it is not clear they can be admitted for their effect on the police. Accordingly, they are only admissible as non-hearsay if Gamez testifies.

And if Gamez testifies but Tahuahua does not, the underlying messages from Tahuahua do not violate the Confrontation Clause because they were nontestimonial.[1]  Though the statements were not made directly to emergency services, they were akin to those made by the victim in *Davis v. Washington*, which the Supreme Court deemed permissible because they "describe[d] current circumstances requiring police assistance" and were "not designed primarily to establish or prove some past fact."  547 U.S. 813, 826-27 (9th Cir. 2006) (cleaned up).  Here too Tahuahua's statements that the driver had a gun and that he was threatening to pimp her described emergency circumstances, which Gamez determined required police assistance.  And like in *Davis*, here Tahuahua was messaging about events as they were actually happening to her, *see id.*, and those messages were necessary to resolve the emergency "rather than simply to learn (as in *Crawford*) what had happened in the past."  *Id.* (citing *Crawford v. Washington*, 541 U.S. 36 (2004)). Accordingly, they do not violate Ryan's rights under the Confrontation Clause.

The texts are admitted, so long as Gamez testifies.

---

[1] The Ninth Circuit and Supreme Court have at least suggested that non-hearsay statements admitted for the effect on the listener do not violate the Confrontation Clause.  *See Williams*, 567 U.S. at 108 n.3 (Thomas, J., concurring) ("[O]ut-of-court statements introduced for their effect on listener do not implicate the Confrontation Clause." (citing 30B M. Graham, Fed. Prac. & Proc. § 7034.1, pp. 521-29 (interim ed. 2011)); *United States v. Sledge*, 762 F. App'x 433, 435-36 (9th Cir. 2019) (unpublished) (non-hearsay evidence admitted for effect on listener did not violate Confrontation Clause because it was not admitted for truth).  But even if non-hearsay could violate the Confrontation Clause, it does not here for the reasons explained above.

3

## II.     PRE-INCIDENT STATEMENTS FROM GAMEZ TO POLICE

Gamez made these statements both in the initial 911 call and in a subsequent call, when Sergeant Brown sought more information on his way to and upon his arrival at the scene. *See* Dkt. No. 37. The statements relayed the information conveyed from Tahuahua to Gamez, including Tahuahua's location as well as that Tahuahua was scared and saw a gun. The government does not intend to admit these statements for their truth. *See* Gov. Mot. 4:25-5:11.

If Gamez testifies, these statements from Tahuahua are admissible as non-hearsay for their effect on the listener—Gamez—because they explain and contextualize why she called the police. *See Payne*, 944 F.2d at 1472; *see also Brody*, 2023 WL 2541118, at *10. If Gamez does not testify, Brown may testify to these statements for the effect on the listener—Brown—because they explain and contextualize his reason for going to the parking lot and for acting how he did there, including directing his subordinate officers to pat Ryan down and search his car for a gun. *Cf. Payne*, 944 F.2d at 1472.

And even if Gamez does not testify, these statements do not violate the Confrontation Clause because they were nontestimonial.[2] Though many of the statements came not from the first 911 call but rather from a second call initiated by Brown, the statements were akin to those made by the victim in *Davis*, because they were "not designed primarily to establish or prove some past fact" but rather "describe[d] current circumstances requiring police assistance." 547 U.S. at 826-27 (cleaned up). As in *Davis*, here Gamez was speaking about events as they were happening—including giving live updates provided by Tahuahua, such as that Tahuahua and the defendant were waiting in a car in the parking lot, *see* Dkt. No. 18, Ex. B, 11:05-10—and she was calling about an actual threat, *see id.* 7:08 ("The guy is armed."), 10:57-11:01 (Tahuahua is "scared to even run"); *Davis*, 547 U.S. at 827. Most importantly, as in *Davis* and like the text messages, here the statements "were necessary to be able to *resolve* the present emergency"— ensuring Tahuahua's safety, finding the firearm, and diffusing related danger—and not just to learn about what happened in the past. *Id.* (citing *Crawford*, 541 U.S. 36 (2004)). It makes no difference that the statements were made in response to police calling Gamez for more information to aid them in

---

[2] *See supra* n.1.

meeting the exigencies of the situation.

Accordingly, the primary purpose of Gamez's statements about Tahuahua's location and belief that the defendant wanted to traffic her and had a firearm were "to enable police assistance to meet an ongoing emergency" and so they were nontestimonial. *Id.* at 828. Their admission does not violate Ryan's rights under the Confrontation Clause.

### III. STATEMENTS FROM TAHUAHUA TO POLICE

The statements made by Tahuahua to the police at the scene are admissible as exceptions to the rule against hearsay. The statements she first made upon exiting the car were present sense impressions about her fear due to the threats to traffic her and the existence of the gun in the car, because they were made immediately after Tahuahua perceived the situation she had experienced in the car. *See* Fed. R. Evid. 803(1). The statements about Tahuahua feeling threatened and scared when she saw the gun and when the defendant implied and threatened to traffic her, *see, e.g.*, Dkt. No. 18, Ex. B, 19:30-20:05, are admissible as statements of Tahuahua's then-existing emotional condition. *See* Fed. R. Evid. 803(3). And they are all admissible as non-hearsay to explain their effect on the listeners—the officers—to explain why they so urgently pursued searching the defendant and the car for a firearm. *See Payne*, 944 F.2d at 1472.[3]

The statements were also nontestimonial and do not violate Ryan's Confrontation Clause rights, even if Tahuahua does not testify.[4] Though a closer question than the statements made by Gamez to the police before the incident, Tahuahua's statements that Ryan had a firearm, that she saw it in the car when he coerced her into agreeing to do sex work, and that she saw him put it behind him all were made under circumstances that objectively indicated that the purpose of the questions was to enable police to meet an ongoing emergency. *See Michigan v. Bryant*, 562 U.S. 344, 356 (2011). They were also necessary to "resolve" the then-existing emergency, including

---

[3] The statements about trafficking are inextricably intertwined with the government's theory of the case and with the evidence it intends to present to contextualize why Tahuahua texted Gamez, why Gamez called the police, and why the police arrived on scene and searched Ryan and his car. They are admissible as evidence of other acts. *See Vizcarra-Martinez*, 66 F.3d at 1013; *Daly,* 974 F.2d at 1216. Ryan, of course, has the right to argue and produce evidence that these statements were inaccurate or unreliable. *See* Def. Mot. 19:16-22.

[4] *See supra* n.1.

5

1   locating the firearm and diffusing any related danger. *See Davis*, 547 U.S. at 827.

2         Defense counsel argues that any emergency ended once Tahuahua was speaking with police and Ryan was in custody, but as the government points out, the police had an objectively reasonable basis to believe that there was still a firearm on the scene and close by, and they needed to confirm its location before they could be sure that the scene, the victim, and the officers were safe. The officers did not know whether the firearm was accessible by the defendant or anyone else on the scene, and indeed other evidence suggests—though the jury will decide if it confirms—that Ryan had access to the firearm for the first several minutes that he was in custody. That merely amplifies the reasonableness that there was an ongoing emergency.

      However, the statements Tahuahua made to the police at the station, including those describing the firearm she saw, are not admissible under the Confrontation Clause because they were not necessary to resolve a then-existing emergency. Rather, they are akin to those made to police in *Crawford*, so that police could learn about "what had happened in the past." *Davis*, 547 U.S. at 827. They may not be introduced unless Tahuahua testifies.

      \*   \*   \*

      Accordingly, the text messages may be admitted only if Gamez testifies. The statements from Gamez to police as well as the statements from Tahuahua to the police at the scene are admissible. The statements from Tahuahua to the police after leaving the parking lot are not admissible unless Tahuahua testifies. The parties' motions are both GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated: November 3, 2023

William H. Orrick
United States District Judge