JODI LINKER
Federal Public Defender
Northern District of California
DANIEL BLANK
Senior Litigator
SAMANTHA JAFFE
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Daniel_Blank@fd.org

Counsel for Defendant Ryan

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>LAMAR RYAN,<br><br>    Defendant. | **Case No.:** CR 23–00291 WHO<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Court:**         Hon. William H. Orrick<br>**Hearing Date:** March 28, 2024<br>**Hearing Time:** 1:30 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................ii

I.   NO GUIDELINE ENHANCMENT IS WARRANTED UNDER U.S.S.G. § 2K2.1(b)(6)(B) FOR POSSESSING THE FIREARM IN THIS CASE IN CONNECTION WITH ANOTHER FELONY ................................................................ 1

    A.   Alleged Pimping Was Not Reliably Established by Hearsay Evidence at Hearing ................................................................................................................ 1

    B.   Even if Credited, Ms. Tahuahua's Statements are Insufficient as a Matter of Law ................................................................................................................ 3

II.  RYAN IS ENTITLED TO FULL CREDIT FOR ACCEPTANCE OF RESPONSIBILITY ................................................................................................ 5

    A.   A Guilty Plea is Not Required for Acceptance of Responsibility ........................ 6

    B.   Relevant Conduct May be Contested Consistent with Acceptance of Responsibility ........................................................................................................ 7

    C.   Under Unusual Circumstances Here, Credit for Early Acceptance is Warranted ............................................................................................................ 10

III. OTHER UNRESOLVED FACTUAL DISPUTES IN THE PRESENTENCE REPORT ............................................................................................................... 12

IV.  DOWNWARD VARIANCE IS WARRANTED BELOW CORRECTED GUIDELINE ......................................................................................................... 13

CONCLUSION................................................................................................................... 14

# TABLE OF AUTHORITIES

**Federal Cases**

*Mondaca-Vega v. Lynch*,
 808 F.3d 413 (9th Cir. 2015) .................................................................................................. 2

*United States v. Baldrich*,
 471 F.3d 1110 (9th Cir. 2006) ............................................................................................. 11

*United States v. Gambino-Ruiz*,
 91 F.4th 981 (9th Cir. 2024) ................................................................................................. 7

*United States v. Guerra*,
 888 F.2d 247 (2d Cir.1989) ................................................................................................... 9

*United States v. Jordan*,
 256 F.3d 922 (9th Cir. 2001) ................................................................................................ 2

*United States v. Lonich*,
 23 F.4th 881 (9th Cir. 2022) ................................................................................................. 2

*United States v. Notrangelo*,
 909 F.2d 363 (9th Cir.1990) ................................................................................................. 9

*United States v. Olea*,
 987 F.2d 874 (1st Cir. 1993) .............................................................................................. 10

*United States v. Piper*,
 918 F.2d 839 (9th Cir.1990) ................................................................................................. 8

*United States v. Rutledge*,
 28 F.3d 998 (9th Cir. 1994) ........................................................................................... 9, 10

*United States v. Talley*,
 CR 22-0028 SI N.D. Cal. Dkt. 93 ....................................................................................... 12

*United States v. Thompkins*,
 853 Fed. Appx. 144 (9th Cir. 2021) ................................................................................... 12

*United States v. Valensia*,
 222 F.3d 1173 (9th Cir. 2000) .............................................................................................. 2

*United States v. Valle*,
 940 F.3d 473 (9th Cir. 2019) ................................................................................................ 2

**Federal Statutes**

18 U.S.C. § 3553 .................................................................................................................. 1, 12, 13

**United States Sentencing Guidelines**

U.S.S.G. § 2K2.1 ..................................................................................................................... 1, 7, 10
U.S.S.G. § 3E1.1 ........................................................................................................................ *passim*
U.S.S.G. § 6A1.3 ............................................................................................................................... 9

**State Cases**

*People v. Avery*,
    38 P.3d 1 (Cal. 2002) ..................................................................................................... 4

*People v. Campbell*,
    51 Cal. App. 5th 463 (Cal Ct. App. 2020) ........................................................................ 4

*People v. Charles*,
    218 Cal. App 2d. 812 (Cal. 1963) ..................................................................................... 5

*People v. Gibson*,
    90 Cal. App. 4th 371 (Cal. Ct. App. 2001) ........................................................................ 5

*People v. Mathis*,
    173 Cal. App. 3d 1251 (Cal. Ct. App. 1985) ..................................................................... 5

*People v. Wagner*,
    170 Cal. App. 4th 509 .................................................................................................... 3, 4

*People v. Zambia*,
    254 P.3d 965 (Cal. 2011) .............................................................................................. 3, 4, 5

**State Statutes**

California Penal Code § 266i .......................................................................................................... 1, 3

**Other Authorities**

Fed. R. Crim. P. 11 ............................................................................................................................ 11
Fed. R. Crim. P. 32 .......................................................................................................................... 3, 13

DEFENDANT'S SENTENCING MEMORANDUM
*RYAN*, CR 23–00291 WHO

iii

# ARGUMENT

Defendant Lamar Ryan respectfully submits that the Court should determine that the correct advisory guideline is 41-51 months imprisonment and then depart downward under the factors of 18 U.S.C. § 3553(a) to a term of imprisonment of 36 months.

## I. NO GUIDELINE ENHANCMENT IS WARRANTED UNDER U.S.S.G. § 2K2.1(b)(6)(B) FOR POSSESSING THE FIREARM IN THIS CASE IN CONNECTION WITH ANOTHER FELONY

Over Mr. Ryan's objection, the U.S. Probation Officer recommends a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony:

> In this case, Mr. Ryan used or possessed the firearm and/or ammunition in connection with another felony offense, specifically, for pimping and pandering, a violation of California Penal Code 266i(a)(2). In this case, the preponderance of the evidence shows Mr. Ryan, after engaging in a consensual sex act with Ms. Tahuahua, showed her his firearm to demonstrate she would be protected if she worked as a prostitute with him being her pimp. As such, a 4-level increase is warranted pursuant to USSG §2K2.l(b)(6)(B).

PSR ¶ 27; *see also* PSR Addendum ¶¶ 13-14. The U.S. Probation Officer is mistaken both on the facts and the law. Accordingly, the Court should reject the proposed enhancement.

### A. Alleged Pimping Was Not Reliably Established by Hearsay Evidence at Hearing

Neither at the largely stipulated-testimony bench trial, nor at the unusually-timed sentencing evidentiary hearing immediately following, did the government present the live testimony of any witness with personal knowledge in support of the allegation that Mr. Ryan possessed the firearm in this case in connection with another felony offense, specifically that he engaged in pimping or pandering of Ms. Tahuahua in violation of California Penal Code § 266i(a)(2). Nor did the government introduce any admission by Mr. Ryan or any other direct evidence (e.g., videos, etc.) in support of that allegation. Instead, it is undisputed that the only evidence in support of the enhancement is the hearsay statements of Ms. Tahuahua, either directly to the police or indirectly through other non-testifying witnesses. While it is true that hearsay alone may be considered sufficient at sentencing, the Court can (and should) take into account the reliability of such hearsay in deciding what weight to give it. Here, as an initial matter, the Court should find that the government has not met its burden of proof due to a lack of reliable evidence.

Generally, the government must carry its burden of proof at sentencing by a preponderance of the evidence, but the government must meet a higher standard—proof by "clear and convincing evidence"—in cases where there is "an extremely disproportionate impact on the sentence." *United States v. Valle,* 940 F.3d 473, 479 (9th Cir. 2019) (quoting *United States v. Jordan,* 256 F.3d 922, 930 (9th Cir. 2001)). Here, it is submitted that, for this four-level enhancement, the Court should require the government to prove the underlying facts by clear and convincing evidence. *See United States v. Lonich,* 23 F.4th 881, 911–912 (9th Cir. 2022) ("We have repeatedly recognized that our cases commonly turn on the last two [*Valensia*] factors: whether the enhanced sentence is four or more offense levels higher (factor 5) and more than double the initial sentencing range (factor 6).") (discussing *United States v. Valensia,* 222 F.3d 1173 (9th Cir. 2000)). (This is especially true to the extent that, as discussed in Part II below, any denial of Mr. Ryan's two- or three-level credit under U.S.S.G. § 3E1.1 for acceptance of responsibility would be based on his objection to this four-level enhancement.  Together, this would result in a difference of six or seven offense levels.)  Under the clear and convincing evidence standard, "the factfinder must have an 'abiding conviction that the truth of [the] factual contentions' at issue is 'highly probable.'" *Lonich,* 23 F.4th at 916 (quoting *Mondaca-Vega v. Lynch,* 808 F.3d 413, 422 (9th Cir. 2015) (en banc)) (alteration in original). However, even under a standard of preponderance of the evidence, the government has still failed to meet its burden.

The fact that the government deliberately declined to call Ms. Tahuahua as a witness, purposefully depriving the defense of the opportunity for meaningful cross-examination to test her credibility, is especially important here because it is undisputed that Ms. Tahuahua lied to the police about the very thing that the government now seeks to use to enhance Mr. Ryan's sentence.  The government has conceded, as it must, that initially Ms. Tahuahua, both indirectly through other non-testifying witnesses and directly to the police, falsely accused Mr. Ryan of trying to forcibly turn her into a prostitute.  On the contrary, Ms. Tahuahua subsequently admitted to the police that she was already working as a prostitute when she met Mr. Ryan.  Dkt. 70 (R.T. 12/4/23) at 75-76, 82-83, 90-111, 116.  Evidence admitted in this case further demonstrated that Ms. Tahuahua continued to work as a prostitute by placing ads for her services after Mr. Ryan was arrested in this case.  *Id.* at 105.

Nevertheless, the government seeks to meet its burden of proof with the self-serving statements of Ms. Tahuahua made before and after she admitted lying to the police, specifically that Mr. Ryan showed her his firearm to demonstrate she would be protected by him while she worked as a prostitute. PSR ¶ 27; *see also* PSR ¶¶ 9-10. The Court should sustain Mr. Ryan's objections to these paragraphs and hold, in light of Ms. Tahuahua's admitted falsehoods to the police on this exact issue, as well as the government's telling decision not to submit her credibility to the crucible of cross-examination as a live witness, that this evidence is insufficiently reliable to meet the government's burden of proof for the enhancement under any standard.[1]

### B. Even if Credited, Ms. Tahuahua's Statements are Insufficient as a Matter of Law

Alternatively, even if the version of Ms. Tahuahua's story cherry-picked by the government is credited by the Court—that Mr. Ryan showed Ms. Tahuahua his firearm as proof of his bona fides when offering to protect her as she worked as a prostitute in exchange for 30 percent of her earnings—it is still insufficient to establish pimping or pandering in violation of California Penal Code § 266i(a)(2) as a matter of law.

As an initial matter, the jury instructions to that offense provide that the prosecution is required to prove that the defendant persuaded, procured, caused, encouraged, or induced the victim to "become" a prostitute. CALCRIM § 1151 (jury instructions for § 266i).[2] In this case, after admitting

---

[1] In addressing Mr. Ryan's objection to this enhancement, the U.S. Probation Officer notes the claim of "other evidence on Mr. Ryan's phones demonstrating that he was actively pimping various women and recruiting other sex workers to come under his management." PSR Addendum ¶ 13. However, the only evidence regarding this claim was the unsupported testimony of an FBI Agent, who was permitted to offer an expert opinion based upon a forensic review of Mr. Ryan's cellphone, without proper notice and disclosures to the defense and without introducing any specific evidence from that phone for the Court to consider. PSR ¶ 16; *see also* Dkt. 70 (R.T. 12/4/23) at 40-64. Mr. Ryan has objected to this testimony and to the corresponding paragraph in the PSR. *See id.; see also* PSR Addendum ¶¶ 7-8. Accordingly, the Court should either resolve this objection based upon the evidence already presented by the government or state on the record "that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter at sentencing." Fed. R. Crim. P. 32(i)(3)(B).

[2] The language in the statute on this point is similarly clear. *See* California Penal Code § § 266i(a)(2) ("become"). However, California cases are split on whether the fact that someone is already working as a prostitute matters in this context. In *People v. Zambia*, the court concluded that the phrase "to become a prostitute" includes both recruiting someone to enter the prostitution trade for the first time and encouraging an existing prostitute, or an undercover officer, to work for him or someone else under some type of new business relationship." 254 P.3d 965, 973 (Cal. 2011) (cited in CALCRIM § 1151). But in *People v. Wagner*, the court unequivocally held that someone cannot be convicted of pandering when the person they are trying to pander is already working as a prostitute. The *Wagner*

to the police that she had been lying, Ms. Tahuahua acknowledged that she had already been working as a prostitute prior to meeting Mr. Ryan. According, Mr. Ryan did not do anything to make her "become" a prostitute, as she already was one.

Moreover, Mr. Ryan's supposed offer to take 30 percent of Ms. Tahuahua's proceeds as a prostitute in exchange for protecting her while she worked as a prostitute is best understood as offering to *work for her* as security guard, *not to have her work for him* as her pimp. This distinction makes a significant difference because California courts are clear that "pandering is a specific intent crime." *People v. Campbell*, 51 Cal. App. 5th 463, 487 (Cal Ct. App. 2020). To commit the offense, an individual "must have the specific intent to persuade, encourage or otherwise influence the target to become a prostitute." *Id.* The California Supreme Court has "explained that the purpose and intent of the pandering statute . . . is to criminalize the *knowing and purposeful* conduct of any person seeking to encourage another person to work with the panderer or another pimp in plying the prostitution trade." *Id.* (internal quotations and citations omitted) (emphasis in original).

Here, what was elicited through hearsay—even taking the government's version as true—was that Mr. Ryan wanted to serve as a security guard for Mr. Tahuahua in exchange for a portion of her earnings as an already actively working independent prostitute, not that he wanted to cause her to do

---

court also held that the cases relied upon in *Zambia* aren't supported by law. *Wagner* cites *People v. Avery*, 38 P.3d 1 (Cal. 2002), which held that "when a statute defining a crime or punishment is susceptible of two reasonable interpretations, the appellate court should ordinarily adopt the interpretation more favorable to the defendant." The court said:

> We feel this statute is clear. The language defining the crime as occurring when a defendant induces or encourages someone else to "become a prostitute" seems fairly clear in its exclusion of efforts to importune someone currently engaged in that profession to change management. If the Legislature had wanted a more broadly applicable provision, it could have easily replaced the phrase "become a prostitute" with the phrase "engage in prostitution." We cannot simply assume it meant the latter when it said the former.
>
> We understand the point that interpreting [the pandering statute] to apply to encourage a prostitute to change management or begin working for a pimp might make the statutory scheme more effective. But that is a legislative call, not a judicial one. We could not apply the statute requiring a full stop at stop signs to also apply to yield signs or flashing yellow lights simply because we thought full stops would always be safer, and we cannot apply [the pandering statute] to persons who are already prostitutes just because it seems to be a more efficient means of enforcement.

*Wagner*, 170 Cal. App. 4th at 509-510.

DEFENDANT'S SENTENCING MEMORANDUM
*RYAN*, CR 23–00291 WHO

4

1   that work as her pimp.  The government's best version of Ms. Tahuahua's statements did not include
2   any claim that Mr. Ryan had the specific intent to persuade, encourage or influence her to become (or
3   even remain) a prostitute because she was ultimately clear that she was already doing this work on
4   her own accord.  Thus, as a matter of law, Mr. Ryan cannot be guilty of pandering her. *See, e.g.,*
5   *People v. Mathis*, 173 Cal. App. 3d 1251 (Cal. Ct. App. 1985) (holding that pandering requires the
6   specific intent to affirmatively influence a person to become a prostitute, and the question of intent is
7   a factual question for a jury to decide).

8   Finally, no inchoate version of these crimes has been established on this record either.  There is
9   no crime in California of aiding and abetting prostitution. *See Cambell*, 51 Cal. App. 5th at 502; *see*
10  *also People v. Gibson*, 90 Cal. App. 4th 371 (Cal. Ct. App. 2001). Nor, in the modern era, do
11  California courts recognize a distinct crime of "attempted pandering" crime, because pandering does
12  not require that a defendant succeed in making someone prostitute themselves, and therefore the
13  substantive crime is complete "when the defendant encourages another person to be become a
14  prostitute . . ." *Zambia*, 254 P.3d at 981, n.8.[3]  Thus, the Court should hold that, even if credited in
15  the version proffered by the government, Ms. Tahuahua's statements are insufficient as a matter of
16  law to establish that Mr. Ryan possessed the firearm in connection with any felony offense.

17  ## II.   RYAN IS ENTITLED TO FULL CREDIT FOR ACCEPTANCE OF RESPONSIBILITY

18  The U.S. Probation Officer in this case recommends that the Court not grant Mr. Ryan any
19  credit for acceptance of responsibility under the guidelines because this case went to trial, claiming
20  that she "is not privy to pre-plea negotiations including the parties' discussions regarding Mr. Ryan's

---

[3] Older cases did recognize attempted pandering as a crime, but the evidence in this case, even taken in the light most favorable to the government, is insufficient to establish that offense because it still requires specific intent: "An attempt to commit pandering is proved by evidence establishing (1) the defendant had "a specific intent" to pander, and (2) he or she committed "a direct, unequivocal act toward that end." *People v. Charles*, 218 Cal. App 2d. 812, 819 (Cal. 1963). *Charles* also states that "[p]andering is established when the evidence shows that the accused has succeeded in inducing his victim to become an inmate of a house of prostitution. . . Attempted pandering is proved by evidence of the acts of the accused which have failed to accomplish the actor's purpose by reason of its frustration by extraneous circumstances rather than by virtue of a change of heart on the part of the one who made the attempt." 218 Cal. App 2d. at 819. However, this reasoning has been superseded by modern caselaw, including *Zambia*.  In any event, such an offense is not established by the record in this case.

willingness to plead guilty prior to the bench trial." PSR Addendum ¶ 15. However, the Court will recall, and it is abundantly clear from the record, not only that this case proceeded to trial solely because the government refused to consent to a conditional guilty plea preserving the right to appeal the legal issue of the denial of his pretrial motions, but also that Mr. Ryan did everything in his power to minimize the need for any pretrial preparation by the government, including unconditionally waiving his right to a jury, offering to stipulate to the testimony of any witness that the government might wish to call, and committing early in the process not to contest his guilt a trial. Dkts. 70 (R.T. 12/4/23) at 7-9, 55; 77 (R.T. 11/30/23) at 3-4, 8, 16; 78 (R.T. 11/9/23) at 3-6. Moreover, the only reason that the case was initially set for a contested trial at all was due to the significant delays by the government in providing full discovery to the offense, including critical trial evidence not disclosed until after the passing of the Court-ordered discovery cut-off. Accordingly, the Court should grant Mr. Ryan full three-level credit for early acceptance of responsibility under U.S.S.G. § 3E1.1.

A.   **A Guilty Plea is Not Required for Acceptance of Responsibility**

It is beyond dispute that the downward adjustment under the guidelines for acceptance of responsibility is not contingent upon the defendant pleading guilty. The text of the applicable guideline section does not state that a guilty plea is required. *See* U.S.S.G. § 3E1.1(a). Moreover, the application notes to that guideline expressly state that credit for acceptance of responsibility may in certain circumstances be granted after trial:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. **In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct).** In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

*Id.* § 3E1.1 (app. n.2) (emphasis added). As the Court is well aware, the circumstances in this case exactly fit the example provided in this application note: Mr. Ryan only went to trial to preserve the right to appeal the denial of his constitutional pretrial motions—to suppress under the Fourth

Amendment and to dismiss under the Second Amendment and the Commerce Clause—after the government refused to consent to Mr. Ryan's entry of a conditional guilty plea to that end.

To be sure, the burden is on Mr. Ryan to clearly demonstrate his acceptance of responsibility despite proceeding to trial, but he has plainly done so here, not only by refraining from arguing at trial that the Court should not find him guilty, but by affirmatively seeking the government's consent to a conditional plea, unconditionally waiving the right to a jury trial, and repeatedly offering to stipulate to any testimony that the government wanted to introduce at trial. *See, e.g., United States v. Gambino-Ruiz,* 91 F.4th 981, 991 (9th Cir. 2024) (upholding denial of credit for acceptance of responsibility after trial based *inter alia* upon the defendant's "decision to forgo less rigorous avenues of preserving legal challenges to the charges against him at trial, such as a conditional plea, a bench trial, or stipulated-facts trial") (footnote omitted).  Accordingly, the Court should determine that Mr. Ryan clearly demonstrated acceptance of responsibility in this case despite it proceeding to trial.

### B. Relevant Conduct May be Contested Consistent with Acceptance of Responsibility

In the Final Presentence Report, the U.S. Probation Officer hints at a different basis for denying Mr. Ryan acceptance of responsibility than was in the Draft Presentence Report: "The undersigned has determined a two-level decrease for acceptance of responsibility is not warranted because he has denied relevant conduct for which he is responsible under the sentencing guidelines."  PSR Addendum ¶ 15. The Officer does not identify what relevant conduct is being referred to here, although presumably it is the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearm in this case in connection with another felony discussed above.  In any event, the Officer applies the wrong legal standard.  Credit for acceptance of responsibility cannot be denied merely because a defendant contests alleged relevant conduct, only if he does so "frivolously."

As an initial matter, for the reasons discussed above, the Court should find that the government has failed to meet its burden of proving that Mr. Ryan possessed the firearm in this case in connection with another felony.  As such, it cannot be inconsistent with acceptance of responsibility to object to a guideline enhancement that is inapplicable.

Moreover, even if the Court determines that the government has met its burden of proving that Mr. Ryan possessed the firearm in this case in connection with another felony, it is not permissible

1 under the guidelines to deny credit for acceptance of responsibility simply because Mr. Ryan
2 contested a proposed guideline enhancement on that basis.  The application notes to § 3E1.1 make
3 clear that merely contesting alleged relevant conduct is insufficient to deny a defendant credit for
4 acceptance of responsibility:

> A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. **A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility, but the fact that a defendant's challenge is unsuccessful does not necessarily establish that it was either a false denial or frivolous**[.]

9 U.S.S.G. § 3E1.1 (app. n.1(A)) (emphasis added).  Cases interpreting this provision are in accord.

10       The Ninth Circuit has expressly held that defendants are entitled to challenge evidence of
11 uncharged relevant conduct at sentencing without losing their ability to seek the acceptance of
12 responsibility adjustment. For example, in *United States v. Piper,* 918 F.2d 839, 840 (9th Cir.1990)
13 (per curiam), the Ninth Circuit held that conditioning an acceptance of responsibility reduction upon
14 the defendant's acquiescence to alleged conduct for which he had not been convicted could violate
15 his Fifth Amendment rights. Along these lines, the Court first stated in *Piper* that a defendant is of
16 course entitled to the acceptance of responsibility reduction "without being required to confess to
17 unproved, uncharged conduct." *Id.* Then, the Court further stated that "a defendant may controvert
18 evidence of other criminal conduct at sentencing without thereby losing the reduction for acceptance
19 of responsibility." *Id.* at 841.  Thus, Probation's assumption that a defendant may not successfully
20 pursue an acceptance of responsibility reduction while non-frivolously challenging an upward
21 adjustment is totally inconsistent with the Ninth Circuit's recognition in *Piper* that a defendant may
22 contest evidence of uncharged relevant conduct at sentencing without losing the acceptance of
23 responsibility reduction.
24       The Probation Officer's analysis in denying the acceptance of responsibility adjustment is
25 fundamentally flawed in that it penalizes Mr. Ryan for legitimately contesting evidence of uncharged
26 criminal conduct which is brought against him purely for enhancement purposes. Under such a
27 rationale a defendant who makes a good faith effort to challenge evidence of uncharged relevant
28 conduct would automatically lose any entitlement to the acceptance of responsibility adjustment. But

the fairness and accuracy of the sentencing process depends upon defendants being able to object to uncharged allegations within and outside of presentence reports. *See United States v. Notrangelo,* 909 F.2d 363, 365-66 (9th Cir.1990); *see also United States v. Guerra,* 888 F.2d 247, 251 (2d Cir.1989) (stating that a defendant must be afforded some opportunity to contest factors that might enhance the sentence and to offer evidence in support of factors that might warrant a reduced sentence).

Similarly, in Chapter Six of the Guidelines, it is stated that when factors that are important to the sentencing determination are reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding those factors. *See* U.S.S.G. § 6A1.3(a). That is what happened here, with a full evidentiary hearing as requested by the government. Significantly, at this hearing, Mr. Ryan did not call any witnesses and did not take the stand on his own behalf; it is merely submitted that that government has failed to meet its burden of proof to establish the guideline enhancement. The U.S. Probation Officer's position would force all defendants accused of uncharged relevant conduct that might subject them to upward adjustments to either waive their challenges or waive their ability to seek acceptance of responsibility. Forcing litigants to waive that right conflicts with the basic sentencing principle that information that is relevant to sentencing needs to have "sufficient indicia of reliability to support its probable accuracy." *Id.*

This case is also distinguishable from caselaw about false denials of relevant conduct. In *United States v. Rutledge,* 28 F.3d 998 (9th Cir. 1994), the Ninth affirmed the district court's denial of the acceptance of responsibility reduction because the district court had correctly found that the defendant, who had testified at his own sentencing hearing, had falsely denied committing uncharged related conduct. *Id.* at 1003. Testimony was elicited there regarding the uncharged relevant conduct because, like in this case, a four-level enhancement for a specific offense characteristic was at issue. *Id.* at 1001–02. *Rutledge* is significant because the Ninth Circuit construed the defendant's false testimony at the sentencing hearing regarding uncharged relevant conduct as constituting a "false denial" within the meaning of Application Note 1(A) of § 3E1.1. Thus, *Rutledge* suggests that, in order to demonstrate a "false denial" of uncharged relevant conduct, the defendant's own false testimony or statements either at trial, sentencing, or at some other stage of the proceedings are necessary. As noted above, Mr. Ryan did not testify or make any such statements here.

The Ninth Circuit's decision in *Rutledge* is also significant because it approved of the approach in *United States v. Olea,* 987 F.2d 874, 878 (1st Cir. 1993), providing that a "false denial" must entail the "giving of materially false information." *Rutledge,* 28 F.3d at 1002. Neither the U.S. Probation Officer nor the government can argue that Mr. Ryan gave materially false information to the court. All Mr. Ryan has done is argue—non-frivolously, as set forth in detail above—that the evidence proffered by the government at the evidentiary hearing, which is reiterated in the Presentence Report, is insufficient to establish the proposed guideline enhancement. Accordingly, the Court should reject any argument that Mr. Ryan is not entitled to acceptance of responsibility merely because he contested the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearm in this case in connection with another felony.

### C.       Under Unusual Circumstances Here, Credit for Early Acceptance is Warranted

In addition to the two-points for acceptance of responsibility under U.S.S.G. § 3E1.1(a), the Court should give Mr. Ryan the additional point under § 3E1.1(b) for early acceptance of responsibility,[4] because preparations for trial in this case were only due to the government's failure to timely produce critical material evidence that would have precluded the need for such preparations.

As the Court is aware, Mr. Ryan raised numerous pretrial objections to the government's repeated violations of the October 2, 2023 discovery cut-off date. *See, e.g.,* Dkt. 23 at 1 & Exh. A (Sept. 21, 2023, Minute Order). After the Final Pretrial Conference on October 30, 2023, the government for the first time disclosed on Sunday, November 5, 2023, highly prejudicial trial exhibits in the form of three cellphone videos, and a screen shot from one of those videos, that it

---

[4] "If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level. The term **'preparing for trial'** means substantive preparations taken to present the government's case against the defendant to a jury (or judge, in the case of a bench trial) at trial. 'Preparing for trial' is ordinarily indicated by actions taken close to trial, such as preparing witnesses for trial, in limine motions, proposed voir dire questions and jury instructions, and witness and exhibit lists. Preparations for pretrial proceedings (such as litigation related to a charging document, discovery motions, and suppression motions) ordinarily are not considered 'preparing for trial' under this subsection. Post-conviction matters (such as sentencing objections, appeal waivers, and related issues) are not considered 'preparing for trial.'" U.S.S.G. § 3E1.1(b) (emphasis in original).

DEFENDANT'S SENTENCING MEMORANDUM
*RYAN*, CR 23–00291 WHO

10

indicated it would seek to introduce in its case-in-chief at trial. *See* Dkt. 47 at 1. Mr. Ryan's cellphone had been seized upon his arrest on July 1, 2023. *See id.* However, the raw data from that phone were not provided to the defense until October 13, 2023, nearly two weeks after the discovery cut-off date. *See id.* The screen shot itself was not disclosed until November 5, 2023. *See id.* Moreover, prior to November 5, 2023, the only evidence from Mr. Ryan's cellphone that the government indicated that it would seek to introduce at trial was a single text message, which the Court excluded at the October 30, 2023, Pretrial Conference on relevance grounds. *See* Dkts. 24, 40.

On Monday, November 6—the day after receiving the Sunday, November 5 disclosure—defense counsel reached out to government counsel to inquire whether they would be willing to grant the requisite consent for Mr. Ryan to enter a conditional guilty plea to the sole indicted charge while preserving the right to appeal the denial of his pretrial motions to suppress and dismiss. See Dkt. 47 at 2 (citing Fed. R. Crim. P. 11(a)(2) (requiring the consent of the government to enter a conditional guilty plea)). Significantly, Mr. Ryan did not seek any concessions, promises or benefits from the government in the form of a plea agreement under Rule 11(c), merely the consent for a conditional plea under Rule 11(a)(2). *See id.* at 2 & Att. A. Nevertheless, the government responded that it would not grant the necessary consent and that, unless Mr. Ryan forfeited his right to appeal the denial of his pretrial motions in a standard guilty plea, the government would insist on a trial. *See id.* at 2.

As seen in this case, immediately after the discovery at issue was finally produced, Mr. Ryan notified the authorities of his desire to enter a guilty plea. Had the production of this discovery been timely, Mr. Ryan's notification would have permitted the government to avoid "preparing for trial" within the meaning of § 3E1.1(b). The fact the government could not avoid preparing for trial in this case is due only to its own violation of the Court's discovery cut-off date. Accordingly, the additional point under § 3E1.1(b) should be granted.

The language of the guideline provides for the additional point for early acceptance of responsibility "upon the motion of the government." U.S.S.G. § 3E1.1(b). However, the Ninth Circuit has long held that the government's decision not to file such a motion is subject to judicial review. *See, e.g., United States v. Baldrich,* 471 F.3d 1110, 1115 (9th Cir. 2006) (reiterating that "the government cannot refuse to file . . . a motion [under § 3E1.1(b)] on the basis of an unconstitutional

motive (e.g., racial discrimination), or arbitrarily (i.e., for reasons not rationally related to any legitimate government interest") (citations and internal quotation marks omitted).  Here, if the Court determines that Mr. Ryan is entitled to the two-point reduction for acceptance of responsibility under § 3E1.1(a), any failure of the government to move for the third point under § 3E1.1(b) would be both arbitrary and an unconstitutional impingement on a defendant's right to bring and seek appellate review of pretrial motions.[5]  In any event, even if the government refuses to make the motion, the Court has discretion to vary downward for early acceptance of responsibility under the factors of 18 U.S.C. § 3553(a).  *Cf. United States v. Thompkins,* 853 Fed. Appx. 144, 145 (9th Cir. 2021) (unpublished memorandum disposition) (recognizing the district court's discretion "to grant a downward variance due to the government's failure to move for a third point for acceptance of responsibility") (citations omitted).

### III.   OTHER UNRESOLVED FACTUAL DISPUTES IN THE PRESENTENCE REPORT

The defense made various other objections, beyond those detailed above, to the inclusion of unreliable factual allegations in the PSR. For example, the defense has objected to the inclusion of information in the PSR which describes photos of suspected firearms and related items found on Mr. Ryan's phone.  *See* PSR ¶ 14. These were also the subject of the evidentiary hearing before the Court in December. The defense agrees with the U.S. Probation Officer's conclusion that "[e]xpert testimony indicated that it could not be determined if the aforementioned suspected machine gun conversion device was operable based on the review of the Apple iPhone video, nor could the expert identify whether the firearms in the video were operable firearms or replicas." PSR ¶ 15. Accordingly, it is respectfully submitted that these paragraphs should be struck from the report.

The defense has also objected to the inclusion in the PSR of paragraphs 17 and 18, which detail the results of a search warrant that was executed almost five months after Mr. Ryan was arrested, in

---

[5] Along these lines, the government provided no rational explanation for its refusal to consent to a conditional plea. It appears that the U.S. Attorney's Office for the Northern District of California is an outlier in its routine aversion to conditional pleas. Other courts in this district have found that such withholding of consent to a conditional plea is tantamount to improperly coercing the defendant to waive his constitutional right to appeal. *See* Dkt. 47 at 2 & Att. B (*United States v. Talley,* CR 22-0028 SI N.D. Cal. Dkt. 93) at R.T. 6:4-8 ("THE COURT: . . . I think what the Government is trying to do is pressure Talley into giving up his appeal on the motion. . . . And I think it's doing it in an improper way.").

1   an apartment where someone other than Mr. Ryan lives and is on the lease. *Compare* PSR ¶¶ 17-18
2   *with* ¶ 81. The contents of these paragraphs have nothing to do with the charged conduct, nor any
3   enhancements. This Court should sustain the defense objection or, in the alternative, state on the
4   record "that a ruling is unnecessary either because the matter will not affect sentencing, or because
5   the court will not consider the matter at sentencing." Fed. R. Crim. P. 32(i)(3)(B).

6         Similarly, the defense has objected to the inclusion of paragraph 55 in the PSR. The summary
7   of that case which did not result in the filing of any charges due to a "lack of evidence" does not
8   include any reliable information. PSR ¶ 55.  The alleged victim stopped working with law
9   enforcement, and none of her statements were ever assessed for credibility.  *See id.* Again, this Court
10  should sustain the defense objection or state that the matter will not be considered at sentencing
11  because it does not affect the guidelines. Fed. R. Crim. P. 32(i)(3)(B).

12        Finally, the PSR notes that Mr. Ryan's ACES score is a three. PSR ¶ 88. Defense counsel
13  administered Probation's ACES questionnaire to Mr. Ryan, and his ACES score is an eight. Defense
14  counsel noted that in their letter objecting to the PSR to Probation, but it is not reflected in
15  Probation's addendum to the final PSR, nor has it been amended in the final PSR. The defense stands
16  on this objection, and requests that the Court sustain it and order Mr. Ryan's ACES score amended.

17  **IV.   DOWNWARD VARIANCE IS WARRANTED BELOW CORRECTED GUIDELINE**

18        The defense requests that the Court vary downward under the factors 18 U.S.C. § 3553(a) to a
19  term of imprisonment of 36 months—which is five months below the low end of the defense-
20  requested advisory guideline range—because of Mr. Ryan's unusually difficult personal history.  For
21  example, as detailed in the PSR, Mr. Ryan had a very traumatic childhood. His father was an
22  alcoholic, severely physically abusive, and even kidnapped his older brother when he was young.
23  PSR ¶ ¶71, 72. These experiences led to diagnoses for PTSD and anxiety. PSR at ¶ 87.

24        Further, for Mr. Ryan's entire childhood, his family struggled financially. PSR at ¶ 73. Mr.
25  Ryan also faced tremendous difficulties in school, including learning disabilities, which resulted in a
26  very delayed reading age. PSR at ¶ 75. All of these factors: lack of guidance, exposure to violence
27  and poverty, and difficulties in school and at home combined to give Mr. Ryan both limited choice
28  sets as an adult, and difficulty discerning the right way forward. These factors have also combined to

give Mr. Ryan a combined ACES score of 8, not 3, and defense counsel requests, as noted *supra*, that the PSR be amended to incorporate that.

Mr. Ryan sees the right way forward now. As he noted in his interview with U.S. Probation, he wants to be the kind of father he did not have, one who is present for his children; he wants to be a part of their lives, to stop the cycle of absent parents and children who struggle with the criminal legal system; he wants to ensure that his children have opportunities that were unavailable to him, that they understand right from wrong, and that their choice-sets are not constrained, as his was. PSR at ¶¶ 78-80.  That focus on being a present parent has been what Mr. Ryan has discussed with defense counsel since this case's inception. Being there for his kids is what matters to him.  That value goes to the very core of who Mr. Ryan is. He deeply regrets the choices that have led him to this courtroom, and wants to demonstrate to this Court and, most importantly, his family, that he can be better.

## CONCLUSION

For the aforementioned reasons, the Court should determine that the advisory guideline range is 41 to 51 months and sentence Mr. Ryan to a term of imprisonment of 36 months.

Dated:	March 21, 2024	Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

_____/S_____
DANIEL BLANK
Senior Litigator
SAMANTHA JAFFE
Assistant Federal Public Defender